IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| DAVID FARRIS and<br>DENISE FARRIS, | ) | |
| | ) | |
| Plaintiffs | ) | |
| | ) | |
| v. | ) | No. 3:04-cv-354 |
| | ) | Jarvis/Guyton |
| KTM NORTH AMERICA, INC., and<br>KTM SPORTMOTORCYCLE AG, | ) | |
| | ) | |
| Defendants | ) | |

## MEMORANDUM OPINION

This is a diversity action brought pursuant to 28 U.S.C. § 1332. Plaintiff David Farris, a long-time dealer of KTM motorcycles, claims that he was injured because of the negligence of defendants while test riding a KTM motocross bike at a KTM-sponsored dealer event. Currently pending is defendants' motion for summary judgment [Court File #14]. For the reasons that follow, the motion will be granted and this action dismissed.

I.

*Factual Background*

The following factual allegations are considered in the light most favorable to the plaintiffs.

Defendant KTM is the manufacturer of motorcycles. For many years, plaintiff David Farris has been an authorized dealer for KTM products. On August 12, 2003, Farris was attending a KTM dealer event, sponsored and run by KTM. This event occurs annually and is mandatory for KTM authorized dealers to attend.

The event was held at TMT MX Park in Monteagle, Tennessee. The purpose of the event was to show and demonstrate new KTM products, including motorcycles, to the dealers. The dealers are generally, and were at this event, strongly encouraged to test ride the motorcycles and other motor driven products produced by KTM for the purpose of familiarizing themselves with the new product line as well as any modifications to the existing product lines.

KTM provided the equipment that the dealers were encouraged to examine and ride during the event. KTM established the procedure by which the dealers in general and plaintiff in particular were directed to use the KTM equipment

and was responsible for maintaining and insuring the proper fueling of the equipment provided for the dealers.

Farris was driving one of the KTM motocross bikes on a dirt-track course which contained several jumps. Suddenly and without warning, as plaintiff proceeded into one of the jumps, the bike plaintiff was riding ceased to operate. His attempts to restart the bike in mid-air were unsuccessful, and plaintiff plowed into a bank on the course with tremendous force, resulting in serious and permanent injury to his lower body and right upper extremity. The complaint alleges that the injuries occurred due to the negligence of KTM.

Defendant has presented the affidavit of Chuck Sun, a motorcycle rider. He states that after the plaintiff was taken to the hospital, the motorcycle was clearly not out of gas because he kick-started it and drove it to the tech area.

Prior to participating and riding in the event, Farris signed a "Demo Ride Liability Release." Plaintiff had signed many similar releases at prior KTM demonstration shows. The language of the release is broad and provides that it releases KTM from "any and all claims, demands, rights and causes of action of any kind whatsoever, known or unknown, which I now have or later may have in any way resulting from, or arising out of, my participation in the Demo Ride Event." KTM

3

North America, KTM AG, and other entities are explicitly named among the defined "Released Parties." The release further expressly waives any claims for negligence and strict liability in the design, manufacture, repair, and maintenance of the motorcycles to be driven at the Demo Ride. In addition, the release states, in all-capital letters, "I UNDERSTAND THAT THIS MEANS THAT I AGREE NOT TO SUE ANY OR ALL OF THE RELEASED PARTIES FROM ANY INJURY RESULTING TO MYSELF OR MY PROPERTY ARISING FROM, OR IN CONNECTION WITH, MY PARTICIPATION IN THIS DEMO RIDE EVENT." The release then includes the representation that the signer is experienced with operating motorcycles and "fully understand[s] the risks and dangers inherent in motorcycling." Further, the signer states that he is "voluntarily participating in this event" and expressly agree[s] to assume the entire risk of any accidents or personal injury, including death ... which [he] might suffer as a result of [his] participation in the Demo Ride event." Finally, the release concludes with certifications by the signer that he has read it, fully understands it, and does not rely on any statements or representations of any Released Parties.

It is undisputed that the plaintiff signed the release and had signed similar releases previously. Defendants contend that this release bars the plaintiff's claim and entitles them to summary judgment.

## II.

### *Summary Judgment Standards*

Pursuant to Rule 56, summary judgment shall be rendered when requested if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. It is the burden of the party seeking summary judgment to show the court that, under uncontradicted facts, the moving party is entitled to judgment as a matter of law. Summary judgment is intended to provide a quick, inexpensive means of resolving issues as to which there is no dispute regarding the material facts. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). In assessing the validity of a summary judgment motion, the court views the pleadings, depositions, answers to interrogatories, admissions, and competent affidavits in a light most favorable to the opponent of the motion. However, an opponent to a motion for summary judgment may not rest upon the mere allegations or denials of his pleadings, but must set forth through competent and material evidence specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id.* Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion,

5

against a party who fails to make a showing sufficient to establish the existence of an essential element of that party's case, and on which the party will bear the burden of proof at trial. *Catrett*, 477 U.S. at 322.

III.

***Tennessee Law Regarding the Validity of Releases***

Under Tennessee law, exculpatory agreements such as the release in this case are enforceable to exonerate defendants from liability, at least under some circumstances. *See Perez v. McConkey*, 872 S.W.2d 897, 904 (Tenn. 1994) ("[A]n express release, waiver, or exculpatory words by which one party agrees to assume the risk of harm arising from another party's negligent conduct will be enforced by the courts so long as it does not extend to liability for willful or gross negligence and does not otherwise offend public policy."). Tennessee's public policy has "clearly favored the freedom of parties to contract that one shall not be liable to the other for his ordinary negligence." *Petty v. Privette*, 818 S.W.2d 743, 745 (Tenn. Ct. App. 1989). In *Olson v. Molzen*, 558 S.W.2d 429 (Tenn. 1977), the Tennessee Supreme Court explained the factors to be considered in determining whether an exculpatory clause is invalid because it affects the public interest. The Court identified six factors commonly found in transactions that affect public interest:

6

>    (a)   The business is a type generally thought suitable for public regulation.
>
>    (b)   The party seeking exculpation performs a service of great public importance, often a matter of practical necessity for some members of the public.
>
>    (c)   The party holds itself out as willing to perform this service for anyone who seeks it, and at least for anyone coming within certain established standards.
>
>    (d)   As a result of the service's essential nature, the transaction's economic setting, the party invoking the exculpation possesses a decisive advantage of bargaining strength against any member of the public who seeks the service.
>
>    (e)   In exercising its superior bargaining power, the party confronts the public with a standardized adhesion contract of exculpation, making no provision whereby a purchaser may pay additional reasonable fees and obtain protection against negligence.
>
>    (f)   As a result of the transaction, the person or property of the purchaser is placed under the control of the seller, subject to the risk of carelessness by the seller or his agents.

*Olsen*, 558 S.W.2d at 431. Application of the *Olsen* factors typically is limited to circumstances involving a contract with a profession, as opposed to "tradesmen in the marketplace." *Id.* at 430.

IV.

*Analysis*

Plaintiff makes three arguments in opposition to the motion for summary judgment. First, plaintiff contends that the complaint alleges that KTM failed to maintain or fuel the motorcycle properly and that this is not a "products liability" claim which would be subject to the release. Second, plaintiff alleges that this failure to maintain the motorcycle amounts to "gross negligence" which cannot be the subject of the release. Third, plaintiff suggests that he was at a "decisive bargaining disadvantage" when he signed the release and therefore that the release would be contrary to public policy. None of these arguments are persuasive.

As set out in § I above, the terms of the release are extremely broad and cover "any and all claims, demands, rights and causes of action of any kind whatsoever, known or unknown, ... ." There is no suggestion anywhere that the release would be limited to a products liability claim. With respect to the claim that this is a "gross negligence" action, there is simply no evidence to support the allegation of gross negligence in the amended complaint.[1]

---

[1] After a hearing on this motion, plaintiff was granted through November 30, 2005, within which to file an expert affidavit to refute the opinions of defendant's experts. No affidavit has been forthcoming.

8

Finally, plaintiff's own affidavit does not suggest that he was at a "decisive bargaining disadvantage" when he signed the release. He admits that while riding the motorcycles was strongly encouraged, his participation was voluntary. He admitted that he was fully aware of the dangers of motorcycling and he had signed similar releases in the past. Nor is riding motorcycles the type of service of great importance to the public which would suggest that courts should decline to enforce exculpatory clauses. *See Olsen*, 558 S.W.2d 429 (invalidating exculpatory clause in medical treatment contract).

V.

### *Conclusion*

In light of the foregoing, defendants' motion for summary judgment [Court File #14] will be granted and this action dismissed.

Order accordingly.

*s/ James H. Jarvis*
UNITED STATES DISTRICT JUDGE
